UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PULSE SUPPLY CHAIN SOLUTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANDRE TAGLIAMONTE and STEVE EMERY, <br><br> Defendants. | § § § § § § § § § § § § § CIVIL ACTION NO. 3:21-CV-2706-B |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Andre Tagliamonte and Steve Emery's Motion for Sanctions (Doc. 47). Because Defendants have shown sanctionable conduct by Pulse and its counsel, the Motion is **GRANTED.**

### I.

### BACKGROUND

This case began almost two years ago when Plaintiff Pulse Supply Chain Solutions, Inc. ("Pulse") filed its complaint against Tagliamonte and Emery in Dallas County state court. *See* Doc. 1, Notice Removal, ¶ 1. Pulse alleged that Defendants, who were both employed by Noetic, Inc., breached nondisclosure agreements[1] and distribution agreements Noetic had entered with Pulse. *See* Doc. 1-1, Orig. Pet., ¶¶ 4, 13. Pulse claimed Defendants violated these agreements by bypassing Pulse and contacting and selling products to TracFone, a potential customer of both Pulse and

---

[1] Defendants maintain that they never signed these nondisclosure agreements and their signatures were either forged or transplanted from a check-in form they signed upon arriving at Pulse's office for a meeting. At the sanctions hearing held on June 23, 2023, both Defendants testified under oath that they were never aware of any nondisclosure agreements between themselves and Pulse.

Noetic. *See id.* ¶¶ 3–4, 13. Defendants assert that these claims are completely frivolous, and Pulse knew this very early into this case's proceedings. *See generally* Doc. 47, Mot. Sanctions.

Defendants removed this case to this Court on November 1, 2021 and subsequently filed a motion to dismiss. Doc. 1, Notice Removal; Doc. 9, Mot. Dismiss. The Court ultimately dismissed almost all of Pulse's claims. *See* Doc. 24, Mem. Op. & Order, 11. However, the Court concluded that Pulse had pleaded a plausible claim that "Defendants [were] personally responsible for breach of the Nondisclosure Agreements each allegedly signed." *Id.* at 9.

While the motion to dismiss was pending, Defendants also filed a Motion for Sanctions under Rule 11 ("First Sanctions Motion"). *See* Doc. 16, Mot. Sanctions. In the First Sanctions Motion, Defendants sought sanctions against Pulse and its counsel, Brian Erikson, for "maintaining Plaintiff's claims for breach of contract despite knowing that the claims are neither factually supported nor legally tenable." *Id.* at 1. The Court denied the Motion as to Count One, which related to the nondisclosure agreements, because, as discussed in its Memorandum Opinion and Order on Defendants' motion to dismiss, Count One "possesse[d] a sufficient factual and legal basis." *See* Doc. 29, Mem. Op. & Order, 3. The Court denied the Motion as to Count Two, which related to the distribution agreements and had been dismissed, because Pulse's federal filings did not "convey[] any intention to continue to assert Count Two." *Id.* at 5.

Following this denial, the parties engaged in discovery and participated in mediation. *See* Doc. 47, Mot. Sanctions, 7–11. Defendants claim they provided Pulse with "clear documentary evidence that there were no viable claims." *Id.* at 8. According to Defendants, these documents demonstrated that Noetic had a relationship with TracFone that preceded the signing of the nondisclosure agreements. *Id.* at 7. Defendants claim that Pulse's decision to continue to pursue

its claims after receiving these documents demonstrates that "this litigation was never based on any good-faith claim." *Id.* at 11.

Ultimately, Pulse filed a Motion to Dismiss under Federal Rule of Civil Procedure 41(a)(2). *See* Doc. 44, Mot. Dismiss. The Court granted this Motion on August 31, 2022, and closed the case. Doc. 46, Order. Four months later, on December 30, 2022, Defendants filed this Motion for Sanctions under Federal Rules of Civil Procedure 11 and 37, Chapter 10 of the Texas Civil Practice and Remedies Code, Rule 13 of the Texas Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent authority. Doc. 47, Mot. Sanctions. Defendants claim Pulse dragged "[Defendants'] names through the mud for more than a year with no intention of ever actually pursuing a case. Then, on the verge of having to produce witnesses for depositions and respond to discovery requests aimed at its contrived documents, [Pulse] dismissed the case." *Id.* at 1. Defendants ask the Court to order Pulse and Erikson to pay all attorneys' fees and expenses they incurred defending themselves in this litigation. *Id.* at 22. The Court held a hearing on June 22, 2023. The Court's findings based on the briefing and evidence presented at the hearing are discussed below.

## II.

## ANALYSIS

The Court first considers two preliminary objections before turning to the merits of Defendants' Motion. The Court then considers Pulse's actions in state court prior to removal and then its action in federal court. In sum, the Court concludes Pulse and Erikson committed sanctionable conduct by filing and pursuing the claims at issue. Therefore, the Court **GRANTS** Defendants' Motion for Sanctions.

At the outset, the Court concludes, contrary to Pulse's contention, that it retains jurisdiction to consider the Motion. *See* Doc. 49, Resp., 2–3. "After the termination of an action, a court may nevertheless 'consider collateral issues.'" *Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990)). Such collateral issues include motions for sanctions. *See id*; *Ratliff v. Stewart*, 508 F.3d 225, 232–33 (5th Cir. 2007). Thus, here, the Court retains collateral jurisdiction to decide Defendants' Motion.

Further, the use of the phrase "with each party to bear its own costs" in the Court's order of dismissal without prejudice does not preclude Defendants from recovering sanctions from Pulse. *See* Doc. 49, Resp., 2–3. That phrase merely indicates the parties are not entitled to fees under the prevailing-party doctrine. *See Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 236 (5th Cir. 2018) (per curiam) (explaining that "prevailing-party status is not conferred through a party's voluntary dismissal without prejudice"). Further, a voluntary dismissal under Rule 41(a) "does not insulate [a plaintiff] from sanctions; [it] merely limits the costs which may be imposed" "to the extent it stops the running of attorneys' fees." *See Portnoy v. Wherehouse Ent. Co.*, 120 F.R.D. 73, 75 (N.D. Ill. 1988). To find otherwise would allow a party to "absolve [itself] of responsibility [for sanctionable conduct] by dismissing [its] suits." *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1079 (7th Cir. 1987). "If [a party] imposed costs on its adversary and the judicial system by violating [applicable sanctions rules], it must expect to pay." *Id.*

Turning to the merits of the Motion, Defendants argue that they are entitled to all of their attorneys' fees and expenses because "[Pulse] and its counsel filed a petition with no proper basis and proceeded to act with nothing but intransigence over the course of more than a year before finally dismissing the case in a futile attempt to avoid facing the consequences of these actions." Doc. 47, Mot. Sanctions, 20. Pulse argues that Defendants' Motion is "a rehashing and reurging of

their [First Sanctions Motion]" and the docket does not contain any actions "that could be considered sanctionable . . . between the Court's denial of [the First Sanctions Motion] (Doc. 29), and the Court's dismissal of this case on August 31, 2022." Doc. 49, Resp., 3–4. The Court will consider Pulse's actions in Dallas County state court under Texas sanctions law and Pulse's actions in this Court under federal sanctions law.

A.     *Pulse's State Court Filings*

The Court begins with Pulse and Erikson's actions in state court. "The federal rules do not apply to filings in state court, even if the case is later removed to federal court." *Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000). Thus, Texas sanctions rules govern "pleadings filed in state court before removal." *See id.* The Court considers whether Defendants have shown that Pulse's Petition was groundless and brought for an improper purpose under Texas Rule of Civil Procedure 13 or Texas Civil Practice and Remedies Code Section 10.001. The Court concludes they have.

Under Rule 13, a party may move for sanctions against an attorney or party for filing "any fictitious pleading." Tex. R. Civ. P. 13. "[T]he filing in question must be groundless and also either brought in bad faith, brought for the purpose of harassment, or false when made." *Nath v. Tex. Children's Hosp.,* 446 S.W.3d 355, 363 (Tex. 2014). A pleading is groundless if it contains "no basis in law or fact and [is] not warranted by good faith argument for the extension, modification, or reversal of existing law." Tex. R. Civ. P. 13. A party's bad judgment or negligence is insufficient to evidence bad faith, rather, the movant must show the conscious wrongdoing for a dishonest, discriminatory, or malicious purpose. *Great W. Drilling, Ltd. v. Alexander*, 305 S.W.3d 688, 698 (Tex. App.—Eastland 2009, no pet.). "Bad faith can be established with direct or circumstantial evidence, but absent direct evidence, the record must reasonably give rise to an inference of intent or willfulness." *Brewer v. Lennox Hearth Prod., LLC*, 601 S.W.3d 704, 719 (Tex. 2020). Similarly,

under Texas Civil Practice and Remedies Code Section 10.001, a party may be sanctioned for a pleading that (1) is brought for an improper purpose; (2) is frivolous; or (3) lacks, or is likely to lack, evidentiary support.[2]

First, as evidence of bad faith, Defendants suggest Pulse brought this suit after Noetic, Defendants' former employer, brought claims against Pulse employees in a parallel state action. *See* Doc. 47, Mot. Sanctions, 2. Defendants claim Pulse intended to use this suit to induce Defendants to testify against Noetic in the state action. *See id.* Defendants cite to an affidavit from Defendants' counsel describing a conversation with Erikson in which he offered to dismiss this action if Defendants agreed to testify. *See* Doc. 48, Mot. Sanctions App., 7. Defendants' counsel later informed Erikson that "any testimony that Defendants would provide would not be helpful to Pulse." *Id.* At the hearing, Defendants claimed that after this conversation, Erikson retracted the offer to dismiss this action.

Second, at the hearing, Defendants presented testimony and evidence suggesting that the non-disclosure agreements which formed the basis of Pulse's claims were fraudulent.[3] Both Defendants testified that they never signed a non-disclosure agreement with Pulse. Defendants also presented handwriting comparisons between Defendants' signatures on other documents and signatures on the non-disclosure agreements. Finally, Defendants presented an affidavit by a former

---

[2] The Texas Supreme Court has analyzed requests for sanctions under Section 10.001 under the same standard and presumptions as Rule 13. *Alexander*, 305 S.W.3d at 698 (citing *Low v. Henry,* 221 S.W.3d 609, 614 (Tex. 2007)).

[3] Defendants presented similar arguments in their First Sanctions Motion, which the Court denied. *See* Doc. 16, Mot. Sanctions, 4. Here, however, Defendants presented in-person, sworn testimony regarding the circumstances surrounding the alleged signing of the agreements. Defendants also presented affidavits from a former Pulse employee. *See* Defs.' Hr'g Ex. R. The Court finds that this evidence and testimony materially changes the argument presented in the First Sanctions Motion and warrants a different outcome.

Pulse employee discrediting the validity of the agreements. *See* Defs.' Hr'g Ex. R. Pulse presented no evidence and no witnesses to refute this evidence and testimony. The Court finds the validity of these non-disclosure agreements questionable at best, especially given Pulse's lack of evidence to refute Defendants' claims. The Court concludes that this evidence demonstrating Pulse forged these agreements, along with Defendants' evidence regarding Pulse's improper motive, is sufficient to show Pulse's bad faith in filing a groundless Petition. Thus, Pulse's actions warrant sanctions under Texas Rule of Civil Procedure 13 and Texas Civil Practice and Remedies Code Section 10.001.

However, Defendants have not presented evidence as to Erikson's bad faith when the Petition was filed. It appears Erikson was not aware Defendants contested the validity of the nondisclosure agreements at the time of the filing. So, he had no knowledge of the fraudulent nature of these agreements when the Petition was filed. Likewise, Defendants have not presented evidence demonstrating he should have known the agreements were fraudulent. Therefore, the Court declines to impose sanctions against Erikson under state law.

B.   *Pulse's Federal Court Filings*

The Court next turns to Pulse's federal court filings and begins with Federal Rule of Civil Procedure 11. In their Motion, "Defendants incorporate [the First Sanctions Motion] under Rule 11 . . . , supplemented with the facts developed in discovery and now part of the case record." Doc. 47, Mot. Sanctions, 20. Rule 11 permits a party to move for sanctions against "any attorney, law firm, or party" if they improperly certify that "a pleading, written motion, or other paper" is filed for a proper purpose and its legal and factual contentions have evidentiary support. Fed. R. Civ. P. 11(b), (c)(1).

"[R]ule 11 does not impart a continuing duty, but requires only that each filing comply with its terms as of the time the paper is signed." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 245 (5th Cir. 1998). Thus, to award sanctions, Defendants must point to federal filings in which Pulse and Erikson certified that the claims were well-grounded in fact and in law, and that the filings were being presented for an proper purpose when it was objectively unreasonable to do so. *See id*; *United States v. Alexander*, 981 F.2d 250, 253 (5th Cir. 1993). Further, if "a reasonable amount of research would have revealed . . . there was no legal foundation for the position taken," Rule 11 has been violated. *Jordaan v. Hall*, 275 F. Supp. 2d 778, 787 (N.D. Tex. 2003) (Fish, S.J.); *accord Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992) (noting that although an attorney "need not provide an absolute guarantee of the correctness of the legal theory advanced in the paper he files. . . . [he] must certify that he has conducted reasonable inquiry into the relevant law").

Defendants argue that even if the non-disclosure agreements were valid, because (1) Noetic had a pre-existing relationship with TracFone and (2) Noetic made no sales to TracFone following the alleged signing of the nondisclosure agreements, Defendants could not have breached the non-disclosure agreements as Pulse claims. *See* Doc. 47, Mot. Sanctions, 6. Defendants notified Pulse of these deficiencies on October 18, 2021 and provided Pulse documentation of this pre-existing relationship on March 4, 2022. *See* Doc. 48, Mot. Sanctions App., 11–12, 18. Thus, according to Defendants, any further pursuit of these claims was sanctionable because Pulse knew these claims were frivolous.

Given the Court's finding that Pulse proceeded with its case in bad faith under Texas Civil Practice and Remedies Code Section 10.001, the Court also concludes Pulse acted in bad faith under Rule 11. *See Alexander v. State Farm Lloyds*, 2014 WL 549389, at *6 (S.D. Tex. Feb. 11,

2014) ("The[] . . . requirements [of Section 10.001] track the requirements of Federal Rule 11(b)[.]"). However, the Court considers whether Defendants have demonstrated additional sanctionable conduct by Pulse or Erikson below.

Assuming *arguendo* the nondisclosure agreements were valid, the Court finds Pulse's decision to proceed with its case after receiving Defendants' October 18, 2021 email objectively reasonable. Pulse need not take Defendants' assertions that its claims were baseless at face value. Requiring a party to concede its case simply because the opposing party claims it lacks a legal or factual basis would run counter to the basic legal tenet that a party must provide evidence to prove or disprove a claim. Thus, Pulse did not commit additional sanctionable conduct by proceeding with its case after October 18, 2021.

The Court next considers whether it was objectively reasonable for Pulse to proceed with its case once it received evidence of Noetic's pre-existing relationship and lack of sales with TracFone. First, the Court considers how the documents affected Pulse's claims regarding Defendants' breach of the non-disclosure agreements. A plaintiff seeking to recover on a breach-of-contract claim must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). Assuming the non-disclosure agreements constituted valid contracts, Pulse must then be able to point to some breach by Defendants to prove its claim.

The Court concludes Pulse had no reasonable basis to believe a breach occurred. The non-disclosure agreements state Defendants must "hold in confidence and will not possess or use . . . or disclose any Proprietary Information *except information . . . [that] was properly known to [them] . . .*

*prior to disclosure by [Pulse]."* *See* Doc. 16-1, Ex. G, 25, 27 (emphasis added). Any assumption Pulse may have had that Defendants "use[d] . . . or disclose[d]" the identity of TracFone in violation of the non-disclosure agreements was dispelled by the documents evidencing Noetic and TracFone's relationship dating back to 2017. *See id.*; *see* Doc. 48, Mot. Sanctions App., 11–12. Thus, apart from the questionable validity of the non-disclosure agreements, after receiving this information, Pulse had no basis in fact or law to believe it maintained a plausible breach of contract claim.

And yet, after receiving this information, Pulse continued to make filings before this Court.[4] After March 4, 2022, Pulse filed a Response to Defendants' Motion for Protective Order Seeking to Stay Discovery (Doc. 21) and its own Motion for Protective Order (Doc. 31) regarding six depositions noticed while Erikson was on a scheduled vacation. It appears Pulse wished to pursue additional discovery before conceding its claims. *See generally* Doc. 21, Resp. (opposing any stay to the discovery process). However, as discussed above, it is unclear to the Court how Pulse intended to succeed on its claims given the information Defendants provided. And when asked at the hearing what discovery Pulse hoped to receive from Defendants, Erikson could not provide an answer. Further, Erikson could not articulate any legal or factual theory that could support Pulse's claims.

Together, the Court concludes that after receiving the documentation from Defendants, Pulse proceeded with its lawsuit despite knowing the claims were frivolous. This is sufficient to support a finding of bad faith. Further, Defendants have provided evidence of an improper motive

---

[4] Any argument Defendants raise as to Pulse's sanctionable discovery responses is irrelevant in the context of Rule 11. *See* Fed. R. Civ. P. 11(d); *Butowsky v. Folkenflik*, 2020 WL 9936143, at *9 (E.D. Tex. Sept. 1, 2020) ("It follows from the text of Rule 11 that it applies only where a person files a paper."), *report and recommendation adopted*, 2020 WL 9936140 (E.D. Tex. Sept. 21, 2020).

of retaliation, as discussed above. *See supra* Section II.A. Thus, Pulse's decision to continue with its claim after receiving Defendants' March 4, 2022 email constitutes additional sanctionable conduct.

The Court also concludes that Erikson committed sanctionable conduct by proceeding with Pulse's case after March 4, 2022. "To comply with the requirements of rule 11, an attorney need not guarantee the correctness of his legal theory; rather, he must engage in a reasonable inquiry into the facts and the law under which the claim is supported." *McKethan v. Tex. Farm Bureau*, 1994 WL 499701, at *6 (5th Cir. 1994). Here, after receiving the documents, Erikson indicated to Defendants' counsel Pulse's intent to proceed with its case. *See* Defs.' Hr'g Ex. E., 1–2. It is clear Erikson did not engage in a reasonable inquiry into the documents provided by Defendants, because if he had, he would have concluded Pulse's claims were groundless. Erikson's inability to articulate a legal theory to support Pulse's claims at the sanctions hearing further confirms this Court's conclusion. Thus, Erikson's decision to proceed with Pulse's claim after receiving Defendants' March 4, 2022 email constitutes sanctionable conduct.

C.  *Appropriate Sanctions*

In sum, Pulse and Erikson pursued a frivolous case for over two years, requiring Defendants to expend thousands of dollars in attorneys' fees. Therefore, the Court concludes that sanctions are appropriate under state and federal law.[5] Under Texas Rules of Civil Procedure 13 and 215.2 and Federal Rule of Civil Procedure 11, the Court may impose reasonable attorneys' fees and expenses as a sanction. Tex. R. Civ. P. 13 (stating that if Rule 13 is violated, a court may impose "an appropriate sanction" under Rule 215.2(6)); Tex. R. Civ. P. 215.2(b)(8) (allowing the court

---

[5] Because the Court awards all of Defendants' requested relief under Rule 11, the Court declines to consider Defendants' arguments under § 1927, the Court's inherent authority, and Rule 37(a).

to order a party or attorney to pay "reasonable expenses, including attorney fees"); Fed. R. Civ. P. 11(c)(11) (stating that sanctions may include "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation"). The Court concludes an award of attorneys' fees and expenses is appropriate here, given Pulse and Erikson's pursuit of a frivolous case lead to Defendants incurring significant fees and expenses.

The Court therefore **ORDERS** Pulse to pay Defendants' reasonable attorneys' fees and expenses incurred from July 27, 2021 to March 4, 2022. Further, the Court **ORDERS** Pulse and Erikson to pay Defendants' reasonable attorneys' fees and expenses incurred from March 5, 2022 to June 23, 2023.

However, Defendants have not submitted sufficient evidence of its reasonable attorneys' fees, such as how many hours their lawyers spent on litigation, or the lawyers' hourly rates, or the specific costs sought. Until Defendants have supplemented their Motion for Sanctions with more detailed evidence, this Court cannot assess the reasonableness of fees and costs. Therefore, Defendants are **GRANTED** leave to supplement their Motion with additional documentation in support of their application for attorneys' fees and costs. Defendants must do so within **TWENTY-ONE (21)** days of the date of this Order. Pulse must file any objections to this documentation within **TWENTY-ONE (21)** days of the date of Defendants' supplemental filing.

## III.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion for Sanctions (Doc. 47). The Court therefore **ORDERS** Pulse to pay Defendants' reasonable attorneys' fees and expenses incurred from July 27, 2021 to March 4, 2022. Further, the Court **ORDERS** Pulse and Erikson to pay Defendants' reasonable attorneys' fees and expenses incurred from March 5, 2022

to June 23, 2023. The exact amount of fees and expenses shall be determined at a later date. Defendants are **GRANTED** leave to supplement their Motion with additional documentation in support of their application for attorneys' fees and costs. Defendants must do so within **TWENTY-ONE (21)** days of the date of this Order.

    SO ORDERED.

    SIGNED: July 11, 2023.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE